# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-60032-ELFENBEIN

**BRITTANY RIVERA**,

      Plaintiff,

v.

**FRANK BISIGNANO**,[1]
**COMMISSIONER OF SOCIAL SECURITY**,

      Defendant.

_____/

## ORDER

**THIS CAUSE** is before the Court on Plaintiff Brittany Rivera's ("Plaintiff") Motion for Summary Judgment, ECF No. [9].  Defendant Frank Bisignano, Commissioner of Social Security Administration ("Defendant"), filed a Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment with Supporting Memorandum of Law (the "Response"), ECF No. [15],[2] to which Plaintiff filed a Response to Defendant's Motion for Summary Judgment (the "Reply"), ECF No. [17].  The Parties have not opted out of the undersigned's jurisdiction and, therefore, have consented to it.  *See* ECF No. [6] at 2 ("If no party objects to Magistrate Judge jurisdiction within this timeframe, then this case will proceed in full before the undersigned Magistrate Judge for all purposes, including entering any dispositive order and final judgment.").  Having reviewed the Parties' filings, the record, and the relevant law, the Court **DENIES** Plaintiff's

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Michelle King should be substituted as the defendant in this suit.

[2] The filing at ECF No. [16] is identical to the one at ECF No. [15].

Motion for Summary Judgment, **GRANTS** Defendant's Motion for Summary Judgment, and **AFFIRMS** the Administrative Law Judge's Decision ("ALJ's Decision").

## I.     BACKGROUND

On December 12, 2020, Plaintiff applied for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq.*, alleging disability from July 1, 2007, based on a seizure disorder and a neurocognitive disorder.  *See* ECF No. [8] at 14, 228, 247, 487, 541.  The Social Security Administration ("SSA") initially denied Plaintiff's disability application on October 15, 2021, and again upon reconsideration on April 26, 2023.  *See id.* at 14, 124.  Thereafter, Plaintiff requested a hearing, which an Administrative Law Judge ("ALJ") held on February 20, 2024.  *See id.* at 14, 39-71.  The ALJ issued an unfavorable decision on May 24, 2024, finding Plaintiff "has not been under a disability within the meaning of the Social Security Act since December 12, 2020, the date the application was filed."  *See id.* at 11-31.  The Appeals Council denied Plaintiff's request for review on November 4, 2024, thus making the ALJ's Decision final.  *See id.* at 5-10.

## II.    LEGAL STANDARDS

### A.    <u>Judicial Review of Claims under the Act</u>

A court's review of an ALJ's decision is limited to assessing whether there is substantial evidence in the record to support the ALJ's findings and whether the ALJ applied the correct legal standards in reaching his or her determination.  *See Biestek v. Berryhill*, 587 U.S. 97, 104 (2019).  Moreover, the Court will affirm an ALJ's decision so long as substantial evidence supports it.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) ("If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." (quotation marks omitted)).

The standard for substantial evidence requires more than a mere scintilla and necessitates relevant evidence that a reasonable person would accept as sufficient to uphold a conclusion.  *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (finding that substantial evidence is "more than a scintilla, but less than a preponderance").  Courts "may not decide the facts anew, reweigh the evidence, or substitute [their] judgment for that of the [ALJ]."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).  Even if the evidence leans against the ALJ's decision, the court must uphold it if substantial evidence supports it.  *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).  "The ALJ need not discuss every piece of evidence if the ALJ's decision is not a broad rejection and there is enough for us to conclude that the ALJ considered the claimant's medical condition as a whole."  *Raper v. Commr. of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024), *cert. denied sub nom.* 145 S. Ct. 984 (2024) (citing *Dyer*, 395 F.3d at 1210; *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987)).

## B.    Regulatory Framework for Weighing Medical Opinions

Social Security regulations require the ALJ to consider and evaluate all evidence, including medical opinions.  20 C.F.R. § 404.1513(a).  Medical opinions are statements "from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" regarding his ability to perform physical demands (such as sitting, standing, walking, reaching, and handling, among others) and mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace).  20 C.F.R. § 404.1513(a)(2).

When evaluating "medical opinions and prior administrative medical findings," the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from" a claimant's

"medical sources," *id.* § 404.1520c(a), but the ALJ "will articulate" "how persuasive" he or she finds "all of the medical opinions and all of the prior administrative medical findings in" the claimant's "case record," *id.* § 404.1520c(b).  In doing so, the ALJ primarily considers four factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant[3]; and (4) specialization.  *Id.* § 404.1520c(c)(1)–(4); *see also Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 897 (11th Cir. 2022) (Section 404.1520c(c) "provides several factors for determining what weight to give a claimant's proffered medical opinions. Those factors include the supportability of the medical opinion, its consistency with other record evidence, the physician's relationship with the claimant, [and] the physician's specialty."). The ALJ also considers "other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of" the SSA's "disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c)(5); *see also Harner*, 38 F.4th at 897 (noting the ALJ considers "other relevant information, such as the physician's familiarity with the other record evidence and with making a claim for disability").

C.     **The SSA's Sequential Evaluation for Disability Claims**

To be eligible for disability insurance benefits ("DIB"), a claimant must meet the disability criteria outlined in the Act. *See* 42 U.S.C. § 423.  A "disability" is defined as an inability "to engage

---

[3] The relationship with the claimant factor "combines consideration of" the "length of time a medical source has treated" the claimant and the "frequency" of visits, both of which "may help demonstrate whether the medical source has a longitudinal understanding of" the impairments.  *See* 20 C.F.R. § 404.1520c(c)(3). This factor also considers the "purpose for treatment" and the "kinds and extent of examinations and testing the medical source has performed or ordered from specialists or independent laboratories," both of which "may help demonstrate the level of knowledge the medical source has of" the impairments.  *Id.* § 404.1520c(c)(3).  Finally, this factor considers whether the medical source has examined the claimant, which may give the medical source "a better understanding of" the impairments "than if the medical source only reviews evidence in" the claimant's "folder."  *Id.* § 404.1520c(c)(3).

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).

To determine a claimant's eligibility for DIB, the ALJ employs a five-step sequential evaluation.  *See* 20 C.F.R. § 404.1520(a)(4).  At the ***first step***, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  *See* 20 C.F.R. § 404.1520(a)(4)(i) ("At the first step, we consider your work activity, if any.").  If so, a finding of "no disability" is made.  *See* 20 C.F.R. § 404.1520(b) ("If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.").

If the claimant is not engaged in substantial gainful activity, then the ALJ must proceed to the ***second step*** and determine whether the claimant suffers from a "severe impairment."  *See* 20 C.F.R. § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s).").  An impairment is severe if it significantly limits the claimant's physical or mental ability to perform basic work activities.  *See* 20 C.F.R. § 404.1520(c) (stating that an impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities").  If no severe impairment is found, then the ALJ will conclude that there is no disability; if a severe impairment is found, then the ALJ will proceed to the next step of the analysis. *See id.* ("If you do not have any impairment or combination of impairments . . . , we will find that you . . . are [] not disabled. . . .  However, it is possible for you to have a period of disability for a time in the past even though you do not now have a severe impairment.").

The ***third step*** requires the ALJ to determine whether the claimant's impairment meets or equals those listed in Appendix 1 of the Regulations.  *See* 20 C.F.R. § 404.1520(a)(4)(iii) ("If you

have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").  If so, the ALJ will find the claimant disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.").

If a claimant's impairment does not meet or equal those listed in Appendix 1 of the Regulations, the ALJ must proceed to **step four**.  *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record[.]").  Step four requires the ALJ to determine whether the claimant has the residual functional capacity ("RFC") to perform past relevant work.  *See id.*  The Regulations define RFC as "the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1). This determination takes into account "all of the relevant medical and other evidence," including the claimant's own testimony and the observations of others.  20 C.F.R. § 404.1545(a)(3).  The ALJ must then compare the RFC with the physical and mental demands of the claimant's past relevant work to determine whether the claimant is still capable of performing that kind of work. *See* 20 C.F.R. § 404.1520(f) ("If we cannot make a determination or decision at the first three steps of the sequential evaluation process, we will compare our residual functional capacity assessment, which we made under paragraph (e) of this section, with the physical and mental demands of your past relevant work.").  If so, the claimant is found not disabled.  *See* 20 C.F.R. § 404.1520(f) ("If you can still [perform past relevant] work, we will find that you are not disabled.").

If the claimant establishes an inability to return to past relevant work, the inquiry turns to *step five*. *See* 20 C.F.R. §§ 404.1520(g), 404.1560(c). "At step five the burden of going forward shifts to the [Commissioner] 'to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.'" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Hale*, 831 F.2d at 1011). If the Commissioner points to possible alternative employment, then the burden returns to the claimant to prove an inability to perform those jobs. *Id.*

## III.    THE ALJ'S DECISION

On May 24, 2024, ALJ Valencia Jarvis (the "ALJ") entered an unfavorable decision, finding Plaintiff "has not been under a disability within the meaning of the Social Security Act since December 12, 2020, the date the application was filed." *See* ECF No. [6] at 14, 26.[4]  In reaching this conclusion, the ALJ employed the SSA's five-step sequential evaluation outlined above.

At *step one*, the ALJ concluded that Plaintiff had "not engaged in substantial gainful activity since December 12, 2020, the application date[.]" *Id.* at 16 (citation omitted). At *step two*, the ALJ concluded that Plaintiff "has the following severe impairments: seizure disorder and mild neurocognitive disorder [.]" *Id.* (citing 20 C.F.R. § 404.920(c)). The ALJ stated that "the limitations caused by the claimant's severe impairments and related symptoms do not preclude all work activity." *Id.*

At *step three*, the ALJ concluded that Plaintiff's impairments failed to meet the criteria listed in Appendix 1 to Subpart P of Part 404. *See id.* at 17. In making this finding, the ALJ considered the listings that most closely aligned with Plaintiff's alleged impairments, which

---

[4] The references to page numbers from the record refer to the CM-ECF page numbers.

included listing 11.02 (regarding epilepsy) and listing 12.02 (regarding mental disorders). *Id.* at

17. As to listing 11.02, the ALJ explained that her review of Plaintiff's medical records did not

show tonic-clonic or dyscognitive seizures occurring at a rate set forth in the applicable listing and,

therefore, did not support a finding that his impairments met any of those listings. *Id.* As to listing

12.02, the ALJ explained that her review of Plaintiff's medical records did not show "at least two

'marked' limitations or one 'extreme' limitation," in any of the four areas of functioning and

therefore, the "paragraph B" criteria are not satisfied. *Id*. at 18. In understanding, remembering

or applying information, the ALJ found that Plaintiff has moderate memory limitations, shown by

some deficits at evaluations, citing Exhibits 4F, 10F, 15F, but with no significant treatment history,

so these impairments would not prevent her from performing competitive work. *Id*. In interacting

with others, the ALJ found that Plaintiff has a mild limitation, as she is generally cooperative and

appropriate, citing Exhibits 4F, 10F, 15F, and her social difficulties would not prevent competitive

work. *Id*. In concentrating, persisting or maintaining pace, the ALJ found Plaintiff has moderate

limitations with some noted difficulties but overall logical and goal-directed functioning, citing

Exhibits 4F, 10F, 15F. *Id*. The ALJ also noted that Plaintiff has not sought significant mental

health treatment or treatment for difficulties with concentration, concluding that these issues would

not preclude competitive work. *Id*. As for adapting and managing herself, the ALJ found that

Plaintiff has moderate limitations, noting that Plaintiff has not been hospitalized for a mental

impairment during the relevant period, and her ability to perform activities of daily living

("ADLs") such as childcare, chores, shopping, cooking, exercising, gaming, and attending church

indicates higher functioning than alleged. *Id*. at 18 (citing Ex. 6E).

The ALJ also stated that "[t]he 'paragraph C' criteria of the listings are not satisfied, as

there is little documentation over the course of a two-year period that the claimant has a minimal

capacity to adapt to changes in [her] environment or daily life even while/after attending at least two years of medical treatment, mental health treatment, psychosocial supports, or a highly structured setting that diminishes their symptoms." *Id*.

The ALJ noted that the "paragraph B" findings are not an RFC assessment but instead measure impairment severity at steps 2 and 3. Accordingly, the ALJ proceeded to ***step four*** of the SSA's five-step sequential analysis to assess the RFC used at steps 4 and 5, which provides a more detailed evaluation of mental functioning. *Id*. The ALJ found that Plaintiff had the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations: can never climb ladders, ropes, or scaffolds; would avoid concentrated exposure to noise, vibration, fumes, odors dusts, gases, and poor ventilation; would have no exposure to unprotected heights and dangerous moving machinery; [and] no driving a commercial vehicle[.]" *Id*. The ALJ also found Plaintiff has the RFC "to carry out simple and routine tasks; and can have occasional interaction with co-workers." *Id*. In making these findings, the ALJ considered all of Plaintiff's alleged impairments against the medical evidence before her. *Id*.

First, the ALJ provided a summary of Plaintiff and her mother's testimony, Plaintiff's longitudinal treatment history, and the opinions of medical sources. *Id*. at 19-21. The ALJ summarized the opinions of multiple treating and examining providers: Ridwan Lin, M.D. (neurologist), Ilene Kaskel, Psy.D. (2015 consultative examiner), Jonathan Pearlson, Psy.D. (2020 evaluation), Biance Howard, Psy.D. and David Yudel, Psy.D. (2021 evaluation), Scott Massaro, Psy.D. and Alan Jaffe, Ph.D. (2022 evaluation), and Alireza Shams M.D.'s[5] (2023 consultative examiner). *Id*. State Agency consultant Jorge Pena, Ph.D. was also cited for interpreting the

---

[5] Plaintiff correctly notes that the ALJ likely intended to refer to Dr. Shams, rather than Dr. Marie P. Adams M.D., based on the exhibit referenced in the decision. *See* ECF No. [8] at (citing Ex. 16F at ECF No. [8] at 880) (indicating two signature lines for Dr. Adams and Dr. Shams, with only Dr. Shams' signature).

cognitive testing evidence. *Id*. The ALJ's discussion covered the claimant's medical history since her encephalitis in 2007, seizure episodes through 2023, and ongoing memory and cognitive assessments. *Id*. The ALJ also considered several medical tests including a November 2010 MRI, which revealed cystic epileptiform changes, and a CT scan and EEG done that same month, which demonstrated epileptiform potential though no electrographic seizure was captured. *Id*. at 19. An October 2022 MRI showed gliosis and encephalomalacia, but was otherwise unremarkable. *Id*. at 21. Clinical exams at that time were unremarkable with intact cranial nerves, normal motor strength, and no sensory deficits. *Id*.

Specifically, as to Plaintiff's seizure disorder, in 2017, she began anti-epileptic medication. *Id*. at 20. Emergency room records through 2022 and 2023 documented breakthrough seizures, but these often coincided with medication noncompliance. *See id*. at 22. When the Plaintiff consistently took anti-epileptic medication such as Keppra or Trileptal, her seizures were generally controlled. *See id*. The ALJ noted that Dr. Shams's 2023 evaluation concluded that Plaintiff had full motor strength, cranial nerves II-XII intact, no sensory deficits, no gross and fine motor function deficits, attention and concentration were good, and her thought process was coherent and logical. *Id*. at 21. The ALJ also considered the medical opinions of two State agency medical consultants, Drs. Stephan and Sporn. Dr. Stephan opined that Plaintiff should be restricted from climbing ladders, ropes, and scaffolds, with occasional climbing of ramps and stairs, and avoidance of concentrated exposure to hazards. *Id*. at 22. Dr. Sporn opined similarly but also recommended avoidance of noise, vibration, and pulmonary irritants, as well as all exposure to hazards. *Id*. The ALJ found both opinions "generally persuasive" because they are consistent and supported with the objective medical evidence, which showed a history of seizures requiring medication adjustments and precautions but also generally controlled when Plaintiff adhered to prescribed

treatment.  *Id.*  The ALJ concluded that "[t]hese factors support the above residual functional capacity assessment."  *Id.*  The ALJ also noted Dr. Shams, a consultative examiner who conducted a physical evaluation, observed that Plaintiff was fully oriented, cooperative, and without motor or sensory deficits, but did not provide a medical opinion regarding functional limitations. *Id.* at 24. Because of the lack of specific findings tied to functional capacity, Dr. Shams's evaluation was not given persuasive weight for seizure-related limitations.  *Id.*

Specifically, as to mental impairments, the ALJ considered the objective psychological testing across consultative evaluations that revealed impaired and delayed recall, attention, and abstract reasoning, though Plaintiff was consistently observed to be oriented, cooperative, and capable of completing basic tasks.  *See id.* at 19-21.  For instance, in 2015, Dr. Kaskel found impaired recent and long-term memory but intact immediate recall.  *Id.* at 20.  In 2020, Dr. Pearlson described "global deficits in all cognitive domains[,]" yet the report did not include actual test scores and characterized performance as "mildly abnormal," suggesting "borderline range of intellectual ability[.]"  *See id.*  In 2021 and 2022, Drs. Howard and Yudel, and later Drs. Massaro and Jaffe, documented difficulty in delayed recall of recent and remote events, but again noted that she was oriented, cooperative, and capable of simple interactions.  *See id.* at 20-21.  Drs. Massaro and Jaffe noted that Plaintiff's immediate memory was intact, she had no difficulty with auditory comprehension, and her attention and concentration were normal.  *Id.* at 21.  Importantly, the ALJ emphasized that Plaintiff had not sought ongoing treatment for cognitive impairments, and her daily activities — including caring for her minor child, completing household chores, shopping, exercising, attending church, and playing video games — indicated a greater functional capacity than alleged.  *See id.* at 21.

The ALJ considered the opinions of State agency medical consultants, Drs. Levasseur, and Pena, and of consultative examiners, Drs. Kaskel, Pearlson, Massaro, Jaffe, Howard, Yudel, and Shams (in her mental status assessment). *See id.*  Drs. Levasseur and Pena, state agency medical consultants, both assessed moderate limitations in understanding, remembering, or applying information, concentration, persistence, and maintaining pace; and adapting and managing oneself, with mild limits in social interaction. *Id.* at 23-24.  Dr. Levasseur emphasized marked difficulty with detailed instructions, while Dr. Pena noted difficulties with complex instructions and adaptation in high-demand contexts. *See id.*  The ALJ found these opinions partially persuasive because they were "somewhat consistent" with objective medical evidence, citing that Plaintiff "experiences some mental and social limitations due to her mild cognitive disorder." *Id.* at 23. The ALJ also found these opinions partially persuasive because they were "generally supported" with objective medical evidence, citing that Plaintiff "has presented with some memory and cognitive deficits at evaluations." *Id.* at 23. The ALJ concluded that the objective medical evidence does not support Dr. Levasseur's opinion of marked limitations. *Id.*  The ALJ explained that Plaintiff's daily activities suggested greater capacity than Dr. Levasseur's marked limitation finding. *Id.*  Thus, the record supported moderate but not marked or extreme restrictions.

The ALJ found the consultative examiner, Dr. Pearlson, somewhat persuasive as it was supported by observed deficits in concentration and memory, and consistent with Plaintiff's need for assistance in some areas. *Id.* at 23-24.  Dr. Pearlson opined that Plaintiff would struggle with complex but not basic daily activities, and recommended family oversight for transportation and finances. *Id.*  Because it was not a full functional assessment, the ALJ gave Dr. Pearlson's opinion partial weight. *Id.*

As for Drs. Massaro and Jaffe, the ALJ deemed their opinions unpersuasive. Drs. Massaro and Jaffe concluded that Plaintiff's memory deficits, anxiety, and medical history would make competitive employment very difficult, affecting persistence, pace, and ability to adapt. *Id*. at 24. The ALJ found their opinions unpersuasive because they were overly restrictive, relied heavily on self-reported memory complaints, and were inconsistent with objective findings and Plaintiff's daily activities. *Id*. The clinical evidence did not support these opinions, which generally showed cooperative behavior, intact orientation, and only moderate cognitive issues. *Id*. The ALJ also noted that Drs. Howard, Yudel, and Adan did not provide functional opinions as it relates to Plaintiff's mental status assessment. *Id*.

The ALJ concluded that the most persuasive opinions were those of Drs. Stephan and Sporn on seizure precautions, along with portions of Drs. Levasseur and Pena's findings regarding moderate mental limitations, and Dr. Pearlson's limited assessment. *See id*. at 22-24. The objective medical evidence supported these opinions: imaging confirmed seizure pathology, but exams were often stable, and seizures were controlled with medication; consultative evaluations showed cognitive deficits, but the absence of ongoing treatment and evidence of functional daily activities pointed to only moderate restrictions. *See id*. The ALJ determined that Plaintiff retained the residual functional capacity to perform work within these limits, with seizure precautions and allowance for simple, routine tasks, but not the extreme restrictions suggested by some consultative examiners. *See id*. at 24.

Considering Plaintiff's RFC to perform light exertional work, the ALJ concluded that Plaintiff lacked the RFC to perform any past relevant work since his alleged disability onset date of September 29, 2021. *See id*. at 31. Because Plaintiff lacked the RFC to perform past relevant work, the ALJ proceeded to ***step five*** of the SSA's five-step sequential analysis. *See id*. at 25.

Under this step of the SSA's analysis, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]"  *See id.*  The ALJ based this conclusion on testimony given by a vocational expert ("VE") that Plaintiff could perform work as a (1) janitor, (2) cleaner or housekeeper, and (3) laundry sorter.  *See id.*  Based on the VE's testimony, the ALJ concluded that Plaintiff was not disabled under the relevant regulatory framework, because Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy."  *Id.*

## IV.   DISCUSSION

Plaintiff's Motion for Summary Judgment presents three main arguments on appeal.  *See* ECF No. [9] at 2.  First, Plaintiff argues that the ALJ erred in finding that the objective medical evidence did not support all of the medical opinions.  *Id.*  Second, Plaintiff argues that the ALJ erred in finding that Plaintiff did not meet the requirements of listing 12.02, especially by holding that there was no objective medical evidence of her limitations.  *Id.*  Third, Plaintiff argues that the ALJ erred by holding that Plaintiff's activities of daily living were inconsistent with her inability to work.  *Id.*  The Court addresses each in turn.

### A.   Whether the ALJ Erred in Finding that the Objective Medical Evidence Did Not Support the Medical Opinions

Plaintiff argues that the ALJ improperly substituted her own lay judgment for medical expertise and improperly cherry-picked from the medical record to craft an RFC ostensibly "supported" by consultants and "objective" evidence.  *See* ECF No. [9] at 10.  Specifically, Plaintiff argues that in evaluating the medical opinions, the ALJ: (1) ignored neuroimaging, *i.e.* MRI, CT, EEG, showing persistent encephalitic damage that objectively corroborates memory deficits; (2) mischaracterized psychological testing as mere "reported deficits," arguing such tests are

themselves objective findings; (3) inappropriately discredited Plaintiff's symptoms because Plaintiff "has sought minimal treatment;" (4) inappropriately discredited Plaintiff's symptoms based on her activities of daily living because they are not indicative of memory functioning and cannot substitute for formal psychological testing; and (5) exhibited bias toward Plaintiff through the irrelevant questioning of Plaintiff about her wedding.[6]  *See id*. at 10-11.

Defendant argues Plaintiff's arguments fail because the ALJ applied the correct post-2017 regulations, expressly addressing supportability and consistency for each opinion, and grounded the RFC in substantial evidence. *See* ECF No. [15] at 4-9 (citing 20 C.F.R. § 416.920c). Defendant argues that Plaintiff's "cherry-picking" claim is vague and incorrect as the ALJ found some opinions generally or partially persuasive, and the RFC was in some respects more restrictive than the State agency assessment. *See id*. at 5-6. On the merits, Defendant says the ALJ reasonably weighed mixed objective evidence, *see id*. at 6, and properly considered activities of daily living as "nonmedical source" evidence to evaluate consistency. *See id*. at 8-9. For mental impairments, Defendant notes that, while some testing reflected recall and sequencing problems, multiple exams also documented normal or euthymic mood, logical thought processes, intact judgment and insight, the ability to follow commands, and at times normal memory. *See id*. at 6-7. For seizures, the ALJ cited reports of good medication control and largely normal neurological exams, including an unremarkable 2023 physical examination. *See id*. at 7. Thus, even if other evidence could support Plaintiff's view, Defendant argues that substantial evidence supports the ALJ's RFC determination. *See id*. at 7. Finally, Defendant counters the wedding-memory questioning, explaining this line of questioning was permissible observational evidence under 20 C.F.R. § 416.929(c)(3) and was not a primary basis for any finding. *See id*. at 9. In sum, Defendant states

---

[6] Many of Plaintiff's arguments are recycled in parts 2 and 3 of Plaintiff's Motion and Reply.

the opinion evidence evaluation was adequate, Plaintiff's arguments are underdeveloped, and the ALJ's Decision should be affirmed.

Plaintiff's Reply argues the ALJ mishandled the evaluation of her mental impairments — specifically memory[7] — by substituting lay judgment for medical expertise and using circular reasoning in that the ALJ rejected medical opinions as inconsistent with activities of daily living, then discounted Plaintiff's daily activity limitations as inconsistent with "objective" evidence. *See* ECF No. [17] at 1-2. In her Reply, Plaintiff critiques the ALJ's rationale for each doctor's evaluation. Plaintiff argues that the ALJ improperly relied on nonmedical factors (*i.e.*, activities of daily living and "minimal treatment") rather than pointing to objective findings in discrediting the medical opinions of Drs. Levasseur, Pena, Kaskel, Massaro, and Jaffe. *See id*. at 2-5. As to Dr. Kaskel, Plaintiff also argues that the ALJ erred by discrediting Dr. Kaskel's opinion based on Plaintiff's testimony of daily living because the ALJ mischaracterized the testimony. *Id*. at 3-4. As to Dr. Massaro and Dr. Jaffe, Plaintiff also argues that the ALJ erred in discrediting the mental status tests supporting these opinions based on her own belief that "Plaintiff's ability to spell backward or remember items after a delay 'would support a finding that she is unable to perform all competitive work.'" *Id*. at 5-6 (citing ECF No. [8] at 24). As to Dr. Pearlson, Plaintiff argues that the ALJ failed to consider, and find persuasive, his recommendation that a family member manage Plaintiff's transportation and finances, his finding of "extremely abnormal" memory functioning, and that his only recommended treatment was to continue seeing Dr. Lin. *Id*. at 4.

Plaintiff argues that the ALJ "failed to follow the standard set forth in 20 C.F.R. § 416.920c(c)" by "ignor[ing] both supportability, in her finding that the mental status exam is not objective medical evidence, and consistency, by ignoring the fact that every medical professional

---

[7] Plaintiff abandons her arguments, if any, regarding her physical limitations or the medical opinions or Drs. Stephan and Sporn. *See* ECF No. [17] at 2.

found more severe impairments than the ALJ's own opinion[.]" *Id*. at 6. Plaintiff adds that other examiners also documented impaired memory and abstract thinking, so the record is consistent with greater limitations, and Defendant's cited "unremarkable" findings (euthymic mood, normal speech, etc.) are irrelevant to short-term memory loss. *See id*. at 6-7. Finally, Plaintiff argues that there is significant objective medical evidence to support her symptoms. *Id*. at 7. With brain imaging and repeated short-term memory failures as objective support, Plaintiff contends the substantial evidence does not support the ALJ's opinion-evidence evaluation and resulting RFC. *See id*. at 1, 7.

Upon its review of the filings and administrative record, the Court disagrees with Plaintiff's first argument and affirms the ALJ's Decision because the ALJ adequately weighed and evaluated the medical opinions and substantial evidence supports the ALJ's Decision regarding these medical opinions. Applying the deferential standard of review, the Court asks only whether the ALJ applied the correct legal standards and whether substantial evidence — "more than a scintilla, but less than a preponderance" that a reasonable person would accept as adequate — supports her decision. *See Biestek*, 587 U.S. at 104; *see Hale*, 831 F.2d at 1011; *Dyer*, 395 F.3d at 1210. The Court may not reweigh the evidence or substitute its judgment for the ALJ's. *See Winschel*, 631 F.3d at 1178; *Bloodsworth*, 703 F.2d at 1239. In evaluating the persuasiveness of medical opinions, an ALJ is only required to address the two "most important" factors — supportability and consistency — and must articulate how those factors were considered. *See* 20 C.F.R. § 404.1520c(b)(2), (c)(1)–(2); *Matos*, 2022 WL 97144, at *4; *Ramos*, 2021 WL 5746358, at *9; *Bonilla*, 2020 WL 9048787, at *4. Supportability refers to how relevant "the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)" — the "more relevant" they are, the

"more persuasive" they will be.  *Id.* § 404.1520c(c)(1).  Objective medical evidence is "medical signs, laboratory findings, or both[.]"  *Id.* §§ 404.1513(a)(1), 404.1502(f).  And consistency refers to how consistent "a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim" — the "more consistent" they are, the "more persuasive" they will be.  *Id.* § 404.1520c(c)(2).  The Court will first determine whether the ALJ properly evaluated each medical opinion under the required supportability and consistency factors, and then whether substantial evidence supports the ALJ's findings.

In evaluating Drs. Levasseur and Pena,[8] the State agency psychological consultants, the ALJ found both opinions partially persuasive.  *See* ECF No. [8] at 23.  She accepted their conclusions that Plaintiff has moderate limitations in concentration, persistence, and pace, as well as the capacity to perform simple and routine tasks.  *See id.*  She rejected findings of more significant cognitive limitations, reasoning that the objective medical record does not fully support such restrictions.  *See id.*  As to consistency, the ALJ noted that Plaintiff's daily activities, such as childcare, household chores, and cooperation with providers, showed higher functioning than alleged.  *See id.*  Plaintiff faults the ALJ for citing activities of daily living instead of "objective" evidence.  *See* ECF No. [9] at 10-11; ECF No. [17] at 2-3.  The regulations, however, expressly allow the ALJ to evaluate consistency by comparing medical opinions to evidence from "other medical sources and nonmedical sources," which includes activities of daily living.  *See* 20 C.F.R. § 416.920c(c)(2); *see also* § 416.929(c)(3) (factors considered when determining how symptoms limit capacity for work).  In her analysis, the ALJ also referenced Drs. Howard, Yudel, Massaro,

---

[8] The ALJ's Decision cites to Dr. Levasseur's opinion using "Ex. 2A" and Dr. Pena's opinion using "Ex. 4A."  *See* ECF No. [8] at 22-23; *see also* ECF No. [8] at 74-77, 84-88.

and Jaffe,[9] the consultative psychological evaluations, making the activities of daily living just one piece used to discount extreme limitations — not the sole reason for discrediting Drs. Levasseur and Pena's opinions.  *See* ECF No. [8] at 23 (citing Exs. 10F, 15F).

The ALJ's analysis falters, however, with the supportability factor; she did not cite Drs. Levasseur or Pena's own reports or objective testing as support for or against their conclusions, only indirectly addressing supportability.  *See id.* (citing Exs. 10F, 15F).  Therefore, the Court must next determine whether the ALJ's failure to address the supportability factor requires a remand for further development of the factual record.

"Remand is unwarranted unless an error creates fundamental unfairness or prejudice."  *Raper*, 89 F.4th at 1274 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (describing the ALJ's errors as "harmless" because they were "irrelevant" to the ALJ's analysis of the relevant factors)).  An improper finding can "be harmless if the ALJ nevertheless proceeded in the sequential evaluation, duly considered [the claimant's] mental impairment when assessing his RFC, and reached conclusions about [the claimant's] mental capabilities supported by substantial evidence."  *Schink*, 935 F.3d at 1268.  Here, remand is not warranted because any error was harmless.  Even if Drs. Levasseur and Pena's opinions were fully credited, it would not compel a finding of disability.  *See Dennis N. v. Bisignano*, No. 24-CV-828-RAH-KFP, 2025 WL 2304643, at *2 (M.D. Ala. 2025) ("To the extent the ALJ erred by neither reconciling the medical findings discrepancy nor evaluating the supportability and consistency of either medical opinion, the Court finds such error was harmless because a correct application of the regulations would not change the ALJ's ultimate finding.").  As explained below, the ALJ engaged in the five-step sequential analysis as to each of Plaintiff's impairments; evaluated the record, including treatment notes,

---

[9] The ALJ's Decision cites to Drs. Howard and Yudel's opinion using "Ex. 10F" and Drs. Massaro, and Jaffe's opinion using "Ex. 15F."  *See* ECF No. [8] at 23, 24; *see also* ECF No. [8] at 656-59, 874-78.

medical opinions, objective test results, and Plaintiff's activities of daily living; and concluded that Plaintiff retained the outlined RFC — a conclusion that substantial evidence supports. *See Dyer*, 395 F.3d at 1210. Because substantial evidence supports the RFC, the ALJ's failure to properly articulate the supportability factor in discounting Drs. Levasseur and Pena's opinions did not result in prejudice or fundamental unfairness and was, therefore, harmless. *See Diorio*, 721 F.2d at 728.

Regarding Dr. Kaskel,[10] a consultative examiner, the ALJ found the opinion not persuasive. *See* ECF No. [8] at 23. The ALJ concluded that to the extent Dr. Kaskel's report constituted a medical opinion, it was limited to the assertion that Plaintiff "lacks the ability to manage funds on her own behalf." *See id*. at 23, 489. This statement, however, speaks to Plaintiff's personal financial competence, not to her work-related functional limitations; therefore, it is not a statement of functional limitation and does not constitute a medical opinion. *See* 20 C.F.R. § 404.1513(a)(2) (defining medical opinions as statements "from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" in her ability to perform physical or mental demands of work.) To the extent the statements are non-opinions, the ALJ was not required to articulate persuasiveness or the supportability and consistency factors. *See id*. § 404.1513(a)(2). Because Dr. Kaskel's evaluation contains no true medical opinion about Plaintiff's ability to perform the physical or mental demands of work, the ALJ need not address the supportability or consistency of Dr. Kaskel's evaluation. *See id*. § 404.1513(a)(2). Thus, the ALJ's analysis regarding Dr. Kaskel's evaluation is sufficient.

---

[10] The ALJ's Decision cites to Dr. Levasseur's opinion using "Ex. 4F." *See* ECF No. [8] at 20, 23; *see also* ECF No. [8] at 485-89.

The ALJ treated Dr. Pearlson's[11] report as only somewhat persuasive, accepting it insofar as it supports an RFC limited to simple, routine tasks but discounting any implication of greater severity. *See* ECF No. [8] at 23-24. Similar to Dr. Kaskel's evaluation, under § 404.1513(a)(2), much of Dr. Pearlson's write-up (*e.g.*, tests and interview results, *see id*. at 543-46, and the global deficits, finance and transportation oversight, ADL guidance, *see id*. at 546) does not constitute a "medical opinion" about Plaintiff's abilities in work-related terms. *See id*. at 20, 23-24, 543-546; *see also* 20 C.F.R. § 404.1513(a)(2). The ALJ correctly stated that the only statement that could be construed as a medical opinion was that Plaintiff could "have difficulty independently completing complex (but not basic) activities of daily living on a consistent and reliable basis; and that a trusted family member should continue to manage her transportation and oversee any finances in order to prevent against errors and to ensure her immediate safety." *See* ECF No. [8] at 23, 546. Although Dr. Pearlson's opinion is vague as to its application to functional work capacity, it provides more applicability than Dr. Kaskel's report, which was limited to Plaintiff's personal financial competence, not to her work-related functional limitations. For example, Dr. Pearlson's reference to complex versus basic activities of daily living provides a broader application to her potential work-related functions.

The ALJ explained that, although this opinion is not a "complete function by function analysis of [Plaintiff's] mental health related limitations in a work setting, the opinion is considered somewhat persuasive and as being supportive of a finding that [Plaintiff would be able to carry out simple and routine tasks on a consistent basis." *See id*. On supportability, the ALJ (using Dr. Pena's critique) emphasized that Dr. Pearlson "did not provide actual testing scores and did not diagnose an intellectual disorder or borderline intellectual functioning[,]" which undermines the

---

[11] The ALJ's Decision cites to Dr. Pearlson's opinion using "Ex. 7F" and "Ex. 11F." *See* ECF No. [8] at 20, 23; *see also* ECF No. [8] at 540-47, 668-74 (identical reports).

opinion's objective medical evidence and supporting explanations even though Dr. Pearlson described "global deficits" and "mildly abnormal" performance.  *See id*. at 20, 540, 544.  On consistency, the ALJ viewed Dr. Pearlson's narrative as only partially consistent with the broader record and supportive of an RFC for simple, routine tasks.  *See id*. at 23-24.  Although the ALJ did not cite to evidence in her consistency analysis, the ALJ elsewhere in her decision cited to longitudinal evidence, *e.g.*, repeated findings of orientation, logical and coherent thought processes, euthymic mood, intact judgment and insight, and periods of normal memory, plus generally unremarkable neurological exams and seizure control with medication adherence.  *See id*. at 19-24, 502, 504, 513-14, 520-21, 524, 540, 542-47, 553-55, 557, 560, 657-59, 670-74, 680-82, 876-78, 880, 912, 915, 917, 921, 928, 932, 937, 940; *see Raper*, 89 F.4th at 1275 ("'[I]t is proper to read the ALJ's decision as a whole, and . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]'") (quoting *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004)).  Thus, the ALJ's analysis regarding Dr. Pearlson's evaluation is sufficient. For these reasons, the Court also concludes that substantial evidence supports the ALJ's determination as to Dr. Pearlson's opinion.

Regarding Drs. Massaro and Jaffe, the ALJ evaluated both the supportability and consistency of this opinion.  *See id*. at 24.  Although the ALJ did not quote Drs. Massaro and Jaffe's opinion verbatim, she expressly found their opinion "not generally supported by the objective medical evidence" and noted they "appear to heavily rely on [Plaintiff's] reported memory deficits rather than objective findings."  *See id*.  That conclusion is borne out of the evaluation of the opinion itself and supported by the objective medical evidence exhibited in Drs. Massaro and Jaffe's opinion.  The opinion lists the "procedures/tests administered" as review of records, observation of behavior, clinical interview, and mental status examination; the

observation of behavior and mental-status examination being the two true sources of their own objective medical evidence. *See id*. at 874. The mental status examination returned largely normal results: well-oriented; clear, coherent speech with logical thought; immediate memory intact (3/3); attention and concentration within normal limits (with difficulty on serial 7s); average estimated intelligence; normal gait and motor skills; fair insight/judgment; euthymic mood with anxious affect; intact remote memory; no psychosis. *See id*. at 876. Against that backdrop, the "Recommendations" section advances work-related limitations in tentative, speculative terms — *e.g.*, it is "***possible***" Plaintiff's ability to "understand, remember, and carry out instructions is ***somewhat*** impaired due to her memory deficits and anxiety[;]" responses to "supervisors and coworkers ***may be*** impaired[;]" adaptation and handling work pressures "***may also be***" impaired; anxiety "***may*** impact" pace and persistence; physical tasks "***may also be***" impaired. *See id*. at 877 (emphasis added). The report also opines Plaintiff "can be expected to have difficulty maintaining competitive and gainful employment," which is an ultimate issue reserved to the Commissioner rather than a function-by-function assessment. *See* 20 C.F.R. §§ 416.913(a)(2)(i) (defining the substance of medical opinions as mental and physical functional abilities and limitations), 416.920b(c)(3)(i) (defining statements on issues reserved to the Commissioner as including statements that you are or are not able to perform regular or continuing work). An ALJ is not required to analyze statements on issues reserved for the Commissioner because they are "inherently neither valuable nor persuasive to the issue of whether [the claimant is] disabled." *See id*. § 416.920b(c). The Court's review of the record evidence confirms that the ALJ's determination — that Drs. Massaro and Jaffe's own limited objective examinations and treatment notes do "not generally support[]" their opinions, *see* ECF No. [8] at 24 — is correct and complete.

The ALJ also found Drs. Massaro and Jaffe's opinion inconsistent with the objective medical evidence and Plaintiff's activities of daily living and testimony, citing that outside of consultative examinations, treatment was minimal and daily activities suggested greater functioning (*e.g.*, shopping, preparing simple meals, doing laundry/dishes, caring for her infant, exercising, playing video games, and attending church). *See id*. (citing Plaintiff's testimony); *see also* 20 C.F.R. § 416.920c(c)(2) (allowing comparisons of medical opinions to evidence from "other medical sources and nonmedical sources," which includes activities of daily living). As previously stated, although the ALJ did not cite to all the record evidence supporting her consistency analysis, the ALJ elsewhere in her decision cited longitudinal evidence (*e.g.*, repeated findings of orientation, logical and coherent thought processes, euthymic mood, intact judgment and insight, and periods of normal memory, plus generally unremarkable neurological exams and seizure control with adherence). *See id*. at 19-24, 502, 504, 513-14, 520-21, 524, 540, 542-47, 553-55, 557, 560, 657-59, 670-74, 680-82, 876-78, 880, 912, 915, 917, 921, 928, 932, 937, 940; *see Raper*, 89 F.4th at 1275. In short, the ALJ evaluated consistency by explaining the conflict between those recommendations and the broader record of treatment and daily functioning.

Additionally, the Court disagrees that the ALJ "rejected objective testing" or substituted a lay diagnosis in noting that inability to spell backward or recall items after a delay does not, standing alone, establish an inability to perform all competitive work. *See id*. at 24. This is a classic supportability and consistency determination. The ALJ did not say delayed recall or spelling backward are meaningless; she said such deficits ***alone*** do not prove an inability to perform all competitive work, especially where other domains are intact and where more moderate examiners' views, such as Drs. Levasseur and Pena, and other findings (*i.e.*, orientation, coherent thought processes, intact judgment and insight at multiple visits and with daily functioning) point

24

to simple, routine capacity.  *See id.* at 24.  Under the governing standard, the Court does not reweigh competing medical evidence where the ALJ's resolution is reasonable. *See Biestek*, 587 U.S. at 104; *Bloodsworth*, 703 F.2d at 1239; *Winschel*, 631 F.3d at 1178; *Dyer*, 395 F.3d at 1210. For these reasons, the Court also concludes that substantial evidence supports the ALJ's determination as to Drs. Massaro and Jaffe's opinion.

As to Drs. Howard, Yudel, and Shams, the ALJ correctly stated that these examiners did not provide functional opinions.  *See* ECF No. [8] at 24.  Plaintiff argues the ALJ erred by treating only Dr. Massaro's statement as a medical opinion while declining to classify similar statements from Drs. Yudel and Shams as opinions.  *See* ECF No. [17] at 6.  The record reflects, and the ALJ stated, that Drs. Howard, Yudel, and Adam did not provide opinions on functional limitations.  *See* ECF No. [8] at 24, 656-59, 880-86.  Narrative exam findings like "symptoms relating [to] cognitive decline," *see id.* at 658, or "cognitive skills, including memory and abstract thinking, were impaired," *see id.* at 880, are objective findings, but they are not medical opinions unless they translate those findings into concrete functional limits (*e.g.*, simple-vs.-complex tasks, pace, supervision, attendance).  *See* 20 C.F.R. § 416.913(a)(2)(i).  On this record, the distinction the ALJ drew is consistent with the regulations' definitions.

The Court next considers whether substantial evidence in the record supports the ALJ's Decision.  In this regard, the Court also addresses Plaintiff's contentions that the ALJ's Decision (1) failed to account for neuroimaging evidence corroborating her memory deficits and (2) inappropriately discredited Plaintiff's symptoms because Plaintiff "has sought minimal treatment."[12]  *See* ECF No. [9] at 10-11.  First, the record reflects that the ALJ explicitly discussed and incorporated the neuroimaging evidence into the decision.  The ALJ acknowledged Plaintiff's

---

[12] The Court will address Plaintiff's argument regarding the ALJ's hearing conduct undermining her credibility analysis and showing bias toward Plaintiff in Section C *infra*.

2007 diagnosis of encephalitis and referenced multiple imaging studies over time, including the November 2010 MRI and CT scans showing cystic and epileptiform changes, as well as the 2010 EEG demonstrating epileptiform potential.  *See* ECF No. [8] at 19, 20.  The ALJ also cited the October 2022 MRI revealing gliosis and encephalomalacia — objective findings consistent with Plaintiff's prior history of encephalitic injury.  *See id*. at 21.  In doing so, the ALJ recognized that Plaintiff's neuroimaging confirmed the presence of structural brain abnormalities but reasonably concluded that the overall record, including treatment notes and consultative examinations, did not establish that these abnormalities resulted in disabling functional limitations beyond those accounted for in the RFC.  *See id*. at 22-24; *see also Biestek*, 587 U.S. at 104 (substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").  Because the ALJ expressly considered the neuroimaging evidence and articulated a rational basis for discounting its alleged disabling significance, the Court finds that substantial evidence supports the ALJ's evaluation of the objective imaging records.

Plaintiff's second argument is the stronger point regarding the ALJ's recurrent reference to "minimal treatment."  *See* ECF No. [8] at 24 (citing Dr. Kaskel's exam at 485-89, Dr. Yudel's exam at 656-60, and Dr. Jaffe's exam at 874-878).  Social Security Ruling ("SSR") 16-3p states that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."  SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267–68 (11th Cir. 2015) ("The ALJ may consider the level or frequency of treatment when evaluating the severity of a claimant's condition, but the regulations specifically prohibit drawing any inferences

about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide.") (internal quotations omitted).  To find that an individual's symptoms are inconsistent with the record evidence, SSR 16-3p requires the ALJ to consider "possible reasons [the claimant] may not . . . seek treatment consistent with the degree of his or her complaints."  *See id.*  "When the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this failure, this court will remand for further consideration." *Henry*, 802 F.3d at 1267 (quoting *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012).  "However, if the ALJ's determination is also based on other factors, such as RFC, age, educational background, work experience, or ability to work despite the alleged disability, then no reversible error exists."  *Id.* (citing *Ellison*, 355 F.3d at 1275).

Here, the ALJ did not address possible reasons why Plaintiff sought minimal treatment before using that as part of the rationale to discount the severity of alleged limitations.  *See* ECF No. [8] at 17, 21, 23, 24.  But the ALJ did not rest the discounting of Drs. Massaro and Jaffe, or other record evidence, solely on treatment frequency; she relied on the totality of mixed mental-status evidence and daily activities and adopted meaningful restrictions in the RFC.  *See Henry*, 802 F.3d at 1267; *Ellison*, 355 F.3d at 1275.  In sum, the record shows abnormal memory findings, but not every source converted those into work-preclusive limitations, and the ALJ reasonably explained why the most restrictive conclusions lacked supportability and consistency when viewed against the longitudinal evidence and the more moderate State agents' assessments she partially credited.  Although Plaintiff has highlighted evidence that could support a different outcome, the Court's task is not to determine whether the record could support Plaintiff's preferred

interpretation but whether substantial evidence supports the ALJ's conclusions.  Given the balance of abnormal and unremarkable findings, and the ALJ's reliance on both medical and nonmedical evidence, the Court concludes that substantial evidence supports the ALJ's persuasiveness findings.  *See Biestek*, 587 U.S. at 104; *Dyer*, 395 F.3d at 1210; *Winschel*, 631 F.3d at 1178; *Raper*, 89 F.4th at 1275.

### B. Whether Objective Medical Evidence Supported the ALJ's Finding that Plaintiff Did Not Meet the Requirements of Listing 12.02

Plaintiff argues the ALJ erred in finding she did not meet Listing 12.02 by substituting her own lay reinterpretation of the record for medical expertise.  *See* ECF No. [9] at 11-12.  Plaintiff contends that, under HALLEX I-2-6-70, 1994 WL 637374 ("HALLEX"), the ALJ is required to rely on the testimony of medical experts when determining whether a claimant meets a listing.  *See id*.  Plaintiff argues that the ALJ's Decision in assessing the Paragraph B criteria relied on whether the Plaintiff sought medical treatment and Plaintiff's ADLs, and not the opinions of any of the medical experts; thereby requiring remand for a proper 12.02 determination.  *See id*.

Defendant argues the ALJ's finding at step three is proper.  *See* ECF No. [15] at 9. Defendant responds that Plaintiff bears the burden at step three and points to the ALJ's functional area analysis.  *See id*. at 10.  To meet Listing 12.02, Plaintiff had to prove marked limits in two Paragraph B domains or an extreme limit in one; however, Plaintiff did not identify evidence showing that level of severity.  *See id*.  According to Defendant, the ALJ, by contrast, rated each domain and cited record support.  *See id*.  Defendant also argues Plaintiff misstates the law on medical experts.  *See id*. at 11.  Defendant claims that HALLEX and SSR 17-2p, 82 Fed. Reg. 1526302, 2017 WL 1105349 (Mar. 27, 2017) require medical expert evidence only when finding that an impairment medically equals a listing, not when determining whether it meets a listing.

*See id.* Thus, the ALJ could conclude Plaintiff did not meet or equal Listing 12.02 without obtaining medical expert testimony.

Plaintiff replies that she meets Listing 12.02 and the ALJ's step-three denial rests on a flawed analysis of Paragraphs B and C. *See* ECF No. [17] at 8-9. Plaintiff recants her initial argument attempting to reframe it as an argument that the ALJ misweighed the medical opinions, rendering the listing evaluation unsupported under SSR 17-2p and contrary to SSA's Program Operations Manual System ("POMS") Disability Insurance ("DI") listing of impairments on mental disorders. *See id* (citing POMS DI 34001.032). She argues the ALJ substituted lay views for the medical record, ignoring opinions indicating an extreme limitation in understanding, remembering, and applying information. *See id.* She contends the ALJ mischaracterized ADLs as inconsistent with objective evidence, causing incorrect Paragraph B and C ratings. *See id.* Plaintiff argues that she meets Paragraph B based on her extreme limitation in her ability to understand, remember, or apply information citing to Drs. Pearlson and Massaro's opinions. *See id.* at 8-9. For Paragraph C, Plaintiff asserts she also qualifies because her condition has been stable for thirteen years and she relies on psychosocial support from her family consistent with POMS DI 34001.032 examples. *See id.* Therefore, she claims the ALJ's failure to properly weigh medical opinions and reliance on lay interpretations requires remand.

The Court rejects Plaintiff's second argument for three reasons. First, the ALJ was not required to rely on medical expert testimony in determining that Plaintiff does ***not*** meet or equal a listing. Second, the ALJ's Decision adequately addressed Listing 12.02 and considered the Paragraphs B and C criteria. Third, substantial evidence supports the ALJ's Decision. As previously stated, at step three, the ALJ determines whether a claimant's impairment "meets or equals" an impairment that is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; if so, the

claimant is found disabled without regard to age, education, or work experience.  *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d).  The claimant bears the burden at step three.  *See Hale*, 831 F.2d at 1011 ("The claimant bears a heavy burden in establishing the existence of a disability. She must first show that her impairment prevents her from performing her previous work.").  An ALJ must consider the listing of impairments at step three but need not "mechanically recite" each listing or every piece of evidence.  *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986).  Courts may infer an implicit finding that a listing is not met/equaled when the decision shows consideration of the pertinent criteria.  *See id.*; *Flemming v. Comm'r of Soc. Sec. Admin.*, 635 F. App'x 673, 676–78 (11th Cir. 2015) (affirming where the ALJ discussed the section 12.00 criteria and the record supported the paragraph B ratings; the analysis applied equally to Listings 12.02 and 12.03).  On review, this Court asks only whether the ALJ applied the correct law and whether substantial evidence — "such relevant evidence as a reasonable mind might accept" — supports the findings.  *See Biestek*, 139 S.Ct. at 1150; *Winschel*, 631 F.3d at 1178; *Bloodsworth*, 703 F.2d at 1239.  The Court does not reweigh conflicting evidence.  *See id*.

First, Plaintiff's premise that the ALJ was required to obtain or rely on medical expert testimony to decide whether she met Listing 12.02 is incorrect.  Plaintiff's argument overreads HALLEX and conflicts with SSR 17-2p, which requires medical expert evidence (or equivalent administrative medical findings) to support a finding of medical equivalence, not to deny that a listing is met.  *See* HALLEX, 1994 WL 637374 ("An ALJ must obtain ME testimony specific to the issue of medical equivalence ***if the ALJ intends to find that the claimant equals the requirements of a listing***.") (emphasis added); SSR 17-2p, 2017 WL 1105349 ("If an adjudicator . . . believes that the evidence . . . ***does not*** . . .support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is ***not*** required to articulate specific evidence

supporting his or her finding . . . Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding."). Nothing in SSR 17-2p or the regulations compels the ALJ to solely rely on medical-expert testimony to conclude that a claimant failed to meet a listing. *See* 20 C.F.R. §§ 416.925 (explaining listings and how they are used); SSR 17-2p, 2017 WL 1105349.

Here, the ALJ found Plaintiff did not meet or equal the listing under Paragraph B, supported by record citations. That is legally permissible. *See Flemming*, 635 F. App'x at 676–78; *Hutchison*, 787 F.2d at 1463. The Court agrees with Defendant that SSR 17-2p requires medical-expert evidence to support a finding of medical equivalence, ***not*** to deny that a claimant meets a listing. *See* SSR 17-2p, 2017 WL 1105349. The ALJ here found Plaintiff did not meet or equal the listing; thus, no medical-expert testimony was required to support that denial.

Second, the Court disagrees that the ALJ committed reversible error on the Listing 12.02 finding. At step three, Plaintiff bore the burden to show the criteria of Listing 12.02 were met — *i.e.*, marked limitations in two Paragraph B domains or an extreme limitation in one, or satisfaction of Paragraph C. *See Hale*, 831 F.2d at 1011; 20 C.F.R. Part 404, Subpart P, Appendix 1, at 12.02. In *Hutchison* and *Flemming*, the Eleventh Circuit found that the ALJ's explicit discussion of the listing criteria and detailed narrative of mental-function findings is adequate to reflect consideration of the listing and to support an implicit determination that the Paragraph B thresholds were not met. *See Flemming*, 635 F. App'x at 676–78 (ALJ's Paragraph B analysis for one listing can substantively apply to others requiring the same functional criteria); *Hutchison*, 787 F.2d at 1463 ("while the ALJ did not explicitly state that the appellant's impairments were not contained in the listings, such a determination was implicit in the ALJ's decision.").

Here, the ALJ rated each Paragraph B domain and cited mixed record evidence (*e.g.*, memory deficits against largely intact orientation, logical thought, euthymic mood, judgment and insight), concluding the limitations were moderate, not marked or extreme. *See* ECF No. [8] at 17, 21. Reading the decision as a whole, the ALJ identified evidence supporting "moderate" ratings in concentration, persistence, and pace and in understanding, remembering, and applying information, while acknowledging abnormal memory testing. *See id*. at 497–539, 553, 676, 680, 761, 906, 924, 928. The Decision adequately addressed supportability and consistency under 20 C.F.R. § 416.920c when discounting more extreme medical opinions (*e.g.*, Drs. Massaro ad Jaffe) and crediting, in part, the more moderate State agency assessments. While Plaintiff emphasizes Dr. Pearlson's statements (including "extremely abnormal" memory and that she poses a safety risk), the ALJ reasonably viewed the functional implications as compatible with simple, routine work, not with marked or extreme Paragraph B criteria limitations. *See id*. at 24. Accordingly, substantial evidence supports the ALJ's Paragraph B analysis, and the Court cannot reweigh those conflicts where a reasonable mind could reach the ALJ's view. *See e.g., Bloodsworth*, 703 F.2d at 1239.

On Paragraph C, even assuming the POMS illustrations fit some aspects of Plaintiff's family assistance, Paragraph C also requires "serious and persistent" disorder with marginal adjustment despite ongoing treatment. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, at 12.02c. The ALJ's broader discussion reflects a course of care centered on neurology with largely unremarkable mental-status domains outside memory, and daily functioning that, while supported, does not compel a finding of marginal adjustment only. *See* ECF No. [8] at 23–24. Plaintiff's argument essentially asks the Court to credit the POMS examples and isolated medical opinions over the ALJ's synthesis of the whole record, which this Court declines to do. The ALJ

acknowledged family reminders and assistance, *see id.* at 22, but reasonably found overall functioning inconsistent with marginal adjustment. While family assistance is a relevant support, its presence does not compel a Paragraph C finding absent the required "serious and persistent" disorder with marginal adjustment showing. Accordingly, substantial evidence supports the ALJ's Paragraph C analysis, and the Court cannot reweigh those conflicts where a reasonable mind could reach the ALJ's view. *See e.g., Bloodsworth*, 703 F.2d at 1239.

Plaintiff has not shown that the ALJ applied an incorrect legal standard at step three or that the step-three findings lack substantial evidence. The ALJ expressly considered Listing 12.02 and the Paragraph B and C criteria, and the decision permits an inference of no listing-level severity, consistent with *Hutchison* and *Flemming*. HALLEX and SSR 17-2p do not require medical-expert testimony to deny that Plaintiff met Listing 12.02, and the ALJ's analysis of Paragraph B and C is supported by the mixed examination findings, treatment history, and documented activities. Accordingly, the ALJ did not reversibly err at step three, and Plaintiff's second argument is rejected.

### C. Whether Objective Medical Evidence Supported the ALJ's Finding that Plaintiff's Daily Activities Were Inconsistent with her Inability to Work

Plaintiff's third argument is that the ALJ improperly relied on her activities of daily living to downplay the limiting effects of her impairments. *See* ECF No. [9] at 12-13. Plaintiff argues these activities are not a sufficient basis, standing alone, to find that her subjective statements are not credible under the Eleventh Circuit's standard, nor are they probative of memory deficits. *See id.* (citing *Townsend v. Comm'r of Soc. Sec.*, No: 13-CV-1046-Orl-GJK, 6 (M.D. Fla. Jul. 8, 2014); *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997); *Venette v. Apfel*, 14 F. Supp. 2d 1307, 1314 (S.D. Fla. 1998); *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003)). Plaintiff also argues that the ALJ mischaracterized

her activities of daily living.  *See id.* at 13.  Plaintiff states that she testified that she has never had

a driver's license, rather than having stopped driving due to recent seizures.  *See id.*  Plaintiff

maintains she requires reminders for all daily tasks, cannot be left alone with her child, and avoids

using the stove use because of safety concerns.  *See id.*  She contends that completing tasks only

with supervision is consistent with her alleged symptoms.  *See id.*  Accordingly, she asserts the

ALJ's reliance on her activities as inconsistent with her claims was erroneous and cannot serve as

substantial evidence of her RFC.  *See id.*

Defendant argues Plaintiff mischaracterizes the ALJ's Decision.  *See* ECF No. [15] at 12.

The ALJ did not base the RFC "in large part" on activities of daily living.  *See id.*  Rather, the ALJ

cited activities of daily living (*e.g.*, simple meals, chores, helping with her child, playing video

games, and attending church) alongside objective medical evidence and treatment history as one

factor among many to find Plaintiff's allegations not entirely consistent with the record.  *See id.*

Defendant emphasizes the ALJ did not equate these activities with an ability to work, but used

them in a limited, proper way — consistent with Eleventh Circuit approval of consideration of

activities of daily living as part of the consistency analysis.  *See id.* (citing *Hargress v. SSA*, 883

F.3d 1302, 1306–07 (11th Cir. 2018)).  Therefore, Plaintiff overstates the significance of activities

of daily living, and read as a whole, the decision reflects a broader evidentiary basis for the RFC.

*See id.*

Plaintiff's Reply[13] adds a new argument — the ALJ failed to clearly articulate adequate,

evidence-based reasons for discounting her symptom allegations as required by *Dyer* and *Mitchell

v. Comm'r.*, 771 F.3d 780 (11th Cir. 2014).  *See* ECF No. [17] at 9.  Plaintiff's main argument is

---

[13] Plaintiff's argument regarding the lack of significant treatment and discounting a mental status examination were previously addressed in Section A, *supra*.  Accordingly, the Court does not readdress them here.

that the ALJ improperly leaned, almost entirely, on activities of daily living, "lack of significant treatment," and a flawed view that the standardized mental status examination tasks are not objective evidence. *See id*. Plaintiff further maintains that the ADLs cited — shopping with spending limits set by family, preparing only simple meals, performing light chores, and helping with childcare — occur only with constant reminders and supervision and subject to safety restrictions (*e.g.*, no stove use; never left alone with the child) and therefore are consistent with, not contrary to, disabling memory impairment. *See id*. at 12. Plaintiff also contends that the ALJ's conduct at the hearing reflected a preconceived disbelief of her testimony. *See id*. at 10. She argues the ALJ engaged in irrelevant, interrogatory-style questioning, specifically about Plaintiff's wedding, while rushing through relevant evidence, amounting to the mental equivalent of a prohibited "sit-and-squirm" test. *See id*. Plaintiff further asserts the ALJ mischaracterized her treatment history, minimized medical opinions, and improperly discounted her mother's function report without citing objective findings. *See id*. at 11-12. Plaintiff maintains that her consistent testimony, corroborated by medical evidence and third-party reports, establishes severe memory impairments that preclude competitive employment. *See id*. She therefore argues that substantial evidence does not support the ALJ's Decision. *See id*. at 12-13.

Given the evolving nature of Plaintiff's arguments, the Court summarizes them here: (1) the ALJ failed to clearly articulate explicit, adequate reasons for discounting Plaintiff and her mother's symptom testimony as required by *Dyer* and *Mitchell*; (2) the ALJ's Decision repeatedly discounted medical opinions and her testimony because they were "inconsistent" with ADLs, making ADLs the primary basis — not a limited, ancillary factor; (3) the ALJ failed to consider all evidence of Plaintiff's daily activities, because as a whole, Plaintiff's activities of daily living are consistent with severe, significant memory issues that prevent her from being able to work full-

time; (4) the ALJ's hearing conduct undermines her credibility analysis and shows bias; and (5) substantial evidence does not support the ALJ's RFC in light of Plaintiff's claimed limitations (*i.e.*, Dr. Pearlson described memory loss as stable, which meant no further deterioration, not that functioning was restored,  and the VE's testimony and Plaintiff's job history show that supervised, cue-dependent ADLs do not translate to sustainable work).

The Court disagrees with these arguments.  Plaintiff raises the first argument for the first time in her Reply brief.  "The Eleventh Circuit has 'long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.'"  *Warren v. Saul*, 533 F. Supp. 3d 1091, 1097 (M.D. Ala. 2021) (applying this principle in the context of social security appeals) (quoting *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014)).  "Additionally, a reviewing court will not consider issues raised for the first time in a reply brief."  *Id.* (citing *Sauppo*, 739 F.3d at 683). Accordingly, the Court need not address this argument.

Nevertheless, the Court finds that the ALJ's Decision, read as a whole, complies with the *Dyer* and *Mitchell* framework as the ALJ articulated the reasons for discounting Plaintiff and her mother's alleged symptom severity, and substantial evidence supports those reasons.  The ALJ's Decision identifies multiple rationales: (i) evidence reflecting seizure control with medication and "stable" symptoms; (ii) mixed mental-status findings showing both deficits (*e.g.*, failure to recall 3/3 words after delay; difficulty spelling backwards) and intact or normal features (orientation, logical and goal-directed thought, cooperative presentation); (iii) limited specialty treatment for memory complaints during the relevant period; and (iv) daily activities the ALJ viewed as exceeding the degree of alleged limitation.  *See* ECF No. [8] at 19–22.  The ALJ also addressed the mother's third-party report, expressly discounting it as not "entirely objective" and inconsistent

with the record as a whole. *See id*. at 19. While Plaintiff disputes the weight the ALJ gave the evidence and her interpretation, the ALJ's narrative supplies specific reasons tied to record citations, which is what *Dyer* and *Mitchell* require. *See Dyer*, 395 F.3d at 1211 (upholding credibility finding where ALJ articulated reasons and cited record); *Mitchell*, 771 F.3d 780; *Bloodsworth*, 703 F.2d at 1239 (court will not reweigh evidence). Additionally, the manner in which the ALJ used activities of daily living as one factor among several is permissible and consistent with the Eleventh Circuit's recognition that reported activities may inform the consistency analysis when considered with the record as a whole. *See Hargress*, 883 F.3d at 1306–07 (approving reliance on a suite of daily activities, among other evidence). On this record, the articulation prong is satisfied.

Plaintiff's second and third arguments regarding ADLs also fail. The Eleventh Circuit permits consideration of activities of daily living as one factor in evaluating the consistency of allegations; reversible error arises where ADLs are treated as a stand-alone substitute for medical analysis. *Compare Hargress*, 883 F.3d at 1306–07 (ALJ permissibly cited ADLs among other evidence) *with Foote*, 67 F.3d at 1561–62 (short-duration ADLs alone are insufficient to discredit disabling allegations). The decision here does not equate ADLs with employability; rather, it discusses ADLs together with treatment history, objective testing, and consultative findings. *See* ECF No. [8] at 17–22 (citing Exs. 2A, 4A, 4F, 10F, 15F, 19F). The ALJ repeatedly ties the Paragraph B ratings and the RFC conclusions to mixed exam results and the absence of marked or extreme deficits, then cites ADLs as corroborative. *See id*. at 18–24. Under *Hargress* and *Dyer*, this is a permissible "one factor among others" use of ADLs, not a singular or dispositive basis.

Plaintiff's alternative ADLs argument is that the ALJ failed to consider the whole picture of Plaintiff's ADLs. Plaintiff emphasizes that her ADLs occur only with reminders and

supervision.  The ALJ acknowledged reminders and accompaniment, *see* ECF No. [8] at 19, 22, but found that, even accounting for those qualifications, Plaintiff's functioning — simple meal preparation, cleaning, managing a debit card with guidance, childcare assistance, church attendance, exercise, gaming, reading, socializing — was inconsistent with an inability to perform all competitive work.  *See id*. at 21–24.  The Eleventh Circuit does not forbid an ALJ from drawing reasonable inferences from ADLs that are qualified by supervision; the key is whether the substantial evidence supports the inference.  *See Dyer*, 395 F.3d at 1212 (upholding reliance on mixed daily activities in context).  Although another factfinder might place more weight on the need for cueing, the substantial evidence standard bars reweighing where, as here, objective evidence shows both cognitive deficits and preserved orientation, logical thought processes, and cooperative behavior, alongside state-agency opinions supporting capacity for simple, routine work.  *See* ECF No. [8] at 19-24, 502, 504, 513-14, 520-21, 524, 540, 542-47, 553-55, 557, 560, 657-59, 670-74, 680-82, 876-78, 880, 912, 915, 917, 921, 928, 932, 937, 940; *see Winschel*, 631 F.3d at 1178 (no reweighing).

Plaintiff's fourth argument regarding the ALJ's conduct at the hearing also fails.  Plaintiff's argument fails to cite the legal basis to remand based on the ALJ's conduct.  Plaintiff points to time limits, interruptions, and questioning about her wedding as undermining credibility and showing bias.  *See* ECF No. [9] at 11; ECF No. [17] at 10-11.  ALJs are presumed unbiased and the party claiming the existence of a bias bears the burden of overcoming that presumption.  *Meade v. Comm'r of Soc. Sec.*, 807 Fed. Appx. 942, 945 (11th Cir. 2020) (citing *Schweiker v. McClure*, 102 S. Ct. 1665 (1982)).  Overcoming the presumption requires "showing a conflict of interest or some other specific reason warranting the ALJ's disqualification."  *Id*. (citing *Schweiker*, 102 S.Ct. 1665).  Bias exists if "an objective, fully informed lay person would have significant doubt about

the judge's impartiality." *Id*. (citing *In re Walker*, 532 F.3d 1304, 1310 (11th Cir. 2008). Bias generally must arise from an extrajudicial source, unless a judge's remarks in a judicial context show such pervasive bias or prejudice that they effectively constitute bias against a party. *See id*. (citing *In re Walker*, 532 F.3d at 1310-11). "Judicial rulings, routine administrative efforts, and ordinary admonishments (whether or not legally supportable) to counsel and witnesses that occur during the course of judicial proceedings that neither rely upon knowledge acquired outside of such proceedings nor display a deep-seated and unequivocal antagonism rendering fair judgment impossible are inadequate grounds for recusal." *Id*. (citing *Liteky v. United States*, 114 S. Ct. 1147, 1158 (1994)).

Measured against this standard, Plaintiff has not met her burden. The cited conduct — the ALJ's 45-minute time constraint and reminders about time, interruptions to focus the presentation, directing counsel to move past older history, and the series of questions about Plaintiff's wedding — reflects case management and examination choices made within the proceeding. Plaintiff identifies no extrajudicial source of bias, nor any personal interest or conflict as required by *Meade*, *In re Walker*, and *Liteky*. Nor do the cited questions demonstrate "deep-seated and unequivocal antagonism" that made fair judgment impossible. *See Liteky*, 114 S.Ct. at 1158. While Plaintiff characterizes the questioning as a "sit-and-squirm test" and infers disbelief from the ALJ's tone and topic choices, such in-hearing conduct — absent more — falls within the category of rulings, administration, and ordinary admonitions that are insufficient to require recusal. *See Meade*, 807 F. App'x at 945 (affirming where the record reflected case-management efforts rather than pervasive prejudice); *Liteky*, 114 S.Ct. at 1158.

Plaintiff also argues that the ALJ's written decision omitted certain hearing responses and ultimately discounted testimony and third-party statements; however, adverse credibility or weight

determinations are judicial rulings that do not themselves evidence bias.  *See Meade*, 807 F. App'x at 945 (citing *Liteky*, 114 S.Ct. at 1158).  The proper question is whether substantial evidence supports those determinations, not whether their existence shows partiality.  On this record, Plaintiff has not shown a conflict of interest, extrajudicial animus, or pervasive in-hearing hostility sufficient to cause a fully informed observer to doubt the ALJ's impartiality.  *See In re Walker*, 532 F.3d at 1310–11.  Accordingly, the presumption of impartiality stands, and Plaintiff has not carried her burden to establish bias sufficient to warrant remand.

Plaintiff's fifth argument fairs no better.  As this argument was also raised for the first time on Reply, the court need not address it.  *See Sapuppo*, 739 F.3d at 681–83; *Warren*, 533 F. Supp. 3d at 1097.  Plaintiff's argument would not succeed regardless.  Plaintiff argues that her "activities of daily living are limited almost solely by her mental health condition" and do not support an RFC due to the supervision and cueing required for her to complete her ADLs.  *See* ECF No. [9] at 11-13.  She explains that Dr. Pearlson's finding that Plaintiff's memory loss was "stable" only meant that it was not actively deteriorating, not that it had improved, *see id*. at 11, and that the VE's testimony and Plaintiff's past job loss does not support the RFC, *see id*. at 12-13.  First, the ALJ used stability, medication to control seizures, and mixed cognitive findings as part of the consistency analysis — not as proof of full restoration.  *See* ECF No. [8] at 21.  This argument does not warrant remand on this record.

Second, as to the VE's testimony, the Eleventh Circuit requires that an ALJ's hypothetical to the VE either: (a) expressly include a claimant's moderate limitations caused by their mental impairments; or (b) otherwise implicitly account for it; if not, the VE's testimony cannot constitute substantial evidence.  *See Winschel*, 631 F.3d at 1181.  The question, then, is whether the ALJ's hypothetical here adequately captured the ALJ's step two and three findings of moderate

limitations in (i) understanding, remembering, or applying information, (ii) concentrating, persisting, or maintaining pace, and (iii) adapting or managing oneself. *See* ECF No. [8] at 17-18. The ALJ found moderate limitations in three mental-functional categories and — after weighing the evidence — limited Plaintiff to simple, routine tasks with occasional interaction with coworkers, alongside seizure-safety and environmental limits. *See* ECF No. [8] at 17-25. That same profile was posed to the VE. *See id.* at 67-70. The VE identified representative jobs: janitor, housecleaner, or laundry sorter. The VE testified that employers would generally tolerate being off-task about 9 minutes per hour or less on a regular basis but more than that would preclude work. *See id.* at 69. Additionally, the VE testified that an employer would generally tolerate 1 unexcused absence per month; however, absences on an ongoing basis would lead to termination. *See id.* As to employee redirection, the VE testified that for simple jobs, like the ones recommended for Plaintiff, employers expect the employee to learn by demonstration within about 30 days; thereafter, "constant prompting" is not tolerated, and any redirection must be very infrequent or would otherwise result in termination. *See id.* at 70.

Under *Winschel*, a restriction to simple, routine tasks may suffice only if the record shows that such a restriction adequately captures the claimant's moderate mental deficits. 631 F.3d at 1181. Here, the ALJ cited and credited Drs. Levasseur and Pena's opinions who expressly translated Plaintiff's moderate cognitive limitations into functional capacity for simple, routine and repetitive tasks in a well-structured environment with occasional interpersonal demands. *See* ECF No. [8] at 22-23. The ALJ found the more limiting consultative opinions of Drs. Massaro and Jaffe, which implied difficulty maintaining competitive employment due to memory-driven pace and persistence problems, unpersuasive as unsupported and inconsistent with the record and daily activities. *See id.* at 24. On that evidentiary footing, the ALJ's hypothetical and RFC limiting

Plaintiff to simple, routine work with limited interaction "implicitly" accounted for the moderate mental deficit in the manner *Winschel* allows. *See Winschel*, 631 F.3d at 1181 (finding error where no accounting at all). Critically, the VE's testimony drew a clear line: after the 30-day learning period, constant prompting is not tolerated in the identified simple jobs; redirection must be very infrequent. That threshold does not, by itself, defeat the ALJ's step-five finding unless the record compels a further limitation, (*i.e.*, that Plaintiff requires ongoing constant cueing or would be off-task more than 15% of the time). The ALJ expressly did not adopt those more severe limitations, and finding that the mix of mental-status data, (*e.g.*, delayed recall failures, difficulty spelling backwards), alongside intact orientation, logical and goal-directed thought processes, cooperative presentation, and daily activities supported simple, routine work rather than inability to sustain work altogether. *See* ECF No. [8] 21–22. Because the ALJ reasonably rejected the premise that Plaintiff needs constant supervision and cueing, she was not required to include that limitation in the hypothetical. Additionally, Plaintiff's past job loss is relevant but not determinative under the substantial-evidence standard when counterbalanced by medical opinions and objective findings supporting the RFC.

Under Eleventh Circuit precedent, the ALJ applied the correct legal standards and supported her symptom-consistency, opinion-persuasiveness, and RFC findings with substantial evidence drawn from mixed exam results, treatment history, state-agency assessments, and daily activities. *See Biestek*, 587 U.S. at 103–05; *Dyer*, 395 F.3d at 1210–12; *Mitchell*, 771 F.3d at 782; *Hargress*, 883 F.3d at 1306–07; *Winschel*, 631 F.3d at 1178–81. Although Plaintiff presents a plausible alternative reading — emphasizing supervision and cueing and "stability" as non-improvement — the Court may not reweigh the evidence. *See Bloodsworth*, 703 F.2d at 1239; *Winschel*, 631 F.3d at 1178. On this record, a reasonable person could accept the evidence cited

by the ALJ as adequate to support the conclusions reached; accordingly, Plaintiff's third set of arguments does not demonstrate reversible error either.

## V.      CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, **ECF No. [9]**, is **DENIED**; Defendant's Motion for Summary Judgment, **ECF No. [15]**, is **GRANTED**, and the ALJ's Decision is **AFFIRMED**.  The Clerk of Court is directed to **CLOSE** this case.  All pending motions are **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers, in Miami, Florida, on March 4, 2026.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record